IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TENNESSEE
AT GREENEVILLE


ROBIN READ, *ET AL*.                    )
                                         )
v.                                       )          NO. 2:08-CV-116
                                         )
LIFEWEAVER, LLC, *ET AL*.               )


## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Lifeweaver, LLC's ("Lifeweaver") and

Dan Frazier's ("Frazier") Motion to Dismiss, [Doc. 7], pursuant to Federal Rule of

Civil Procedure 12(b)(2) for lack of personal jurisdiction, (b)(3) for improper venue,

(b)(5) for insufficient service of process as to Frazier,[1] and (b)(6) for failure to state

a claim upon which can be granted.  Fed. R. Civ. P. 12(b).  After the issue was fully

briefed, the plaintiffs moved to amend their Complaint a second time.[2]  The United

States Magistrate Judge granted the unopposed motion, and the plaintiffs filed their

Second Amended Complaint.  The defendants then filed a "Motion to Dismiss

Plaintiffs' Second Amended Complaint," [Doc. 21], renewed their previous motion,

---

[1]In the defendants' reply, [Doc. 18], footnote 2, Frazier, "in an effort to simplify the issues before the court, drops his motion to dismiss for improper service of process under Rule 12(b)(5)."

[2]The plaintiffs first amended their Complaint to certify the action as a class action pursuant to Federal Rule of Civil Procedure 23.  Fed. R. Civ. P. 23.

and relied upon their previous arguments. The plaintiffs responded and stated that they also rely upon their previous filings. The matter is ripe for review.

## I. FACTS

The facts and allegations are gleaned from the Second Amended Complaint. Brandon Michael Read died on September 6, 2004, from an IED explosion while serving with our country's armed forces in Iraq. Frazier and Lifeweaver are citizens of Arizona, and Frazier sells anti-war t-shirts and paraphernalia on the website <www.CarryaBigSticker.com>. The anti-war t-shirts at issue in this case state "Bush Lied, They Died." The shirts then list the names of soldiers who died in the war in Iraq, and the list includes Brandon Michael Read's name. The font used for the soldiers' names cannot be read beyond arm's length.

The State of Arizona passed legislation providing civil and criminal penalties for the unauthorized use of the names of American soldiers. *Frazier v. Boomsma*, CV 07-08040-PHX-NVW, 2007 WL 2808559, at *17 (D. Ariz. Sept. 27, 2007) (citing Ariz. Rev. Stat. § 12-761 (2007)). Frazier challenged the statute in United States District Court in Arizona. In the conclusions of law section of that court's opinion, which was deciding whether to issue a preliminary injunction, the district court stated that the statute was an unconstitutional restriction on Frazier's core political speech. *Id*. at *12. The fact that Frazier sells the message on a t-shirt,

in that court's opinion, did not transform this political speech into the less protected class of commercial speech. *Id*. This "Order and Findings of Fact and Conclusions of Law" was entered by the district court on September 27, 2007.

On April 22, 2008, the plaintiffs filed their original Complaint with this Court. As stated above, they amended the Complaint twice, and they allege that Plaintiff Robin Read, Brandon Michael Read's mother, "learned [in September 2007] that the defendants, jointly and severally, were selling, for profit, 'anti-war t-shirts' with the names of all of the thousands of American service members killed in Iraq, including plaintiff's decedent." On September 24, 2007, Plaintiffs Robin Read and Michael A. Read, Brandon Michael Read's father, through their attorney, sent Frazier a letter at Lifeweaver. The letter stated that Frazier did not have permission to use their son's name, and it asked him to remove their son's name from any of the t-shirts by a certain date. If Frazier did not comply, then plaintiffs gave notice of intent to file suit in this Court. Brandon Michael Read's name was not removed, and the plaintiffs filed suit.

Regarding personal jurisdiction over the defendants, the plaintiffs allege that the defendants "purposefully availed themselves of the privilege of acting in this forum, to wit, the Eastern District of Tennessee, or causing a consequence in the forum state. It is shown to the Court that by selling their product containing the

un-consented use of plaintiff's decedent's name or likeness, for profit, by way of the internet, defendants, jointly and severally, have 'purposely availed themselves of the privilege of acting in this forum.'" Robin Read "received notice" that her son's name was listed on the t-shirts "as a direct consequence of defendants' joint and several sale of this product over the internet in the stream of interstate commerce, and particularly in this forum." The plaintiffs also allege that the defendants "have a substantial enough connection with the State of Tennessee, and particularly the Eastern District of Tennessee, to make the exercise of jurisdiction over these defendants reasonable." The plaintiffs attach pages from the website, and the plaintiffs allege that the t-shirts are being sold for $22.00.

The plaintiffs allege that the defendants have violated Tennessee Code Annotated section 47-25-1105, which states:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian, or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable to a civil action.

Tenn. Code Ann. § 47-25-1105 (2009). They also allege claims of negligent infliction

of emotional distress, intentional infliction of emotional distress, outrageous conduct, and alternatively, reckless infliction of emotional distress.

## II. ANALYSIS

### A. Personal Jurisdiction

First, the defendants argue that the claims should be dismissed because of a lack of personal jurisdiction as to both defendants. *See* Fed. R. Civ. P. 12(b)(2).

Plaintiffs bear the burden of demonstrating that personal jurisdiction exists. *Youn v. Track, Inc.*, 324 F.3d 409, 417 (6th Cir. 2003); *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002); *Third National Bank v. WEDGE Group, Inc.*, 882 F.2d 1087, 1089 (6th Cir. 1989). A district court may decide whether to rule on the jurisdictional issue upon a full trial record, after an evidentiary hearing, or merely on the basis of a written record. *Welsh v. Gibbs*, 631 F.2d 436, 438-39 (6th Cir. 1980). This matter has been fully briefed by the parties and affidavits and exhibits have been filed. There is no need for an evidentiary hearing in this matter and the motion will be decided upon the record.

When a court decides the issue on the basis of the written record alone, plaintiff need only make a *prima facie* case of jurisdiction. To survive a motion to dismiss, plaintiffs need only "demonstrate facts which support a finding of jurisdiction." *Welsh*, 631 F.2d at 438 (quoting *Data Disc, Inc. v. Systems Technology*

*Associates, Inc.*, 557 F.2d 1280, 1285 (9th Cir. 1977)). The burden on plaintiffs is relatively slight. The court considers the pleadings and affidavits in the light most favorable to the plaintiffs. Dismissal under Rule 12(b)(2) is proper only if the specific facts alleged by plaintiffs, taken as a whole, fail to state a *prima facie* case for personal jurisdiction. *Bridgeport Music, Inc. v. Still N The Water Pub.,* 327 F.3d 472, 478 (6th Cir. 2003); *Neogen,* 282 F.3d at 887; *Calphalon Corp. v. Rowlette*, 228 F.3d 718, 721 (6th Cir. 2000); *Kerry Steele, Inc. v. Paragon Indus.,* 106 F.3d 147, 149 (6th Cir. 1997); *Theunissen v. Matthews*, 935 F.2d 1454, 1458-59 (6th Cir. 1991); *Serras v. First Tennessee Bank Nat. Ass'n.*, 875 F.2d 1212, 1214-15 (6th Cir. 1989); *American Greetings Corp. v. Cohn*, 839 F.2d 1164, 1168-69 (6th Cir. 1988).

This Court may exercise personal jurisdiction over the defendants if it is authorized by the law of the forum state (Tennessee) and otherwise consistent with the Due Process Clause of the Fourteenth Amendment to the United States Constitution. *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 888; *Neal v. Janssen*, 270 F.3d 328, 331 (6th Cir. 2001). The Tennessee long-arm statute, Tenn. Code Ann. § 20-2-214, extends personal jurisdiction to the full limit allowed by due process. *Massada Inv. Corp. v. Allen*, 697 S.W.2d 332, 334 (Tenn. 1985). The long-arm statute states in pertinent part:

> "Persons who are non residents of Tennessee . . . are subject to the jurisdiction of the courts of this state as to

any cause or claim for relief arising from:

(1) [t]he transaction of any business within the state;

(2) [a]ny tortious act or omission within this state;

. . . .

(6) any basis not inconsistent with the Constitution of this
State or of the United States.

Tenn. Code Ann. § 20-2-214(a) (2010). The Tennessee long-arm statute is coterminous with the limits on personal jurisdiction imposed by the Fourteenth Amendment's Due Process Clause. *Bridgeport Music*, 327 F.3d at 477; *Neal*, 270 F.3d at 331; *Payne v. Motorists' Mutual Insurance Companies*, 4 F.3d 452, 455 (6th Cir. 1993); *Southern Machine Co. v. Mohasco Industries, Inc*., 401 F.2d 374, 376-77 (6th Cir. 1968). Because the limits of personal jurisdiction under Tennessee law and the limits of personal jurisdiction as a matter of constitutional due process are identical, the two inquiries are merged. *Bridgeport Music*, 327 F.3d at 477.

The bedrock principle of personal jurisdiction due process analysis is that the non-resident defendant must have sufficient "minimal contacts" with the forum state such that the maintenance of the suit there does not offend traditional motions of fair play and substantial justice. *International Shoe Co. v. Washington*, 326 U.S. 310, 316 145; *Youn*, 324 F.3d at 417. Minimum contacts exist when a defendant's conduct and connection with the forum state are such that the defendant "should

reasonably anticipate being haled into court there." *World-Wide Volkswagon Corp. v. Woodson*, 444 U.S. 286, 297 (1980). It is the quality of contacts, not the quantity of contacts, that is important. *Neal*, 270 F.3d at 332.

Due process requires that individuals have "fair warning" that a particular activity may subject them to the forum's jurisdiction. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985). Where a forum seeks to assert specific personal jurisdiction over an out-of-state defendant who has not consented to suit there, the "fair warning" requirement is satisfied if the defendant purposefully directed its activities at a forum resident. *Id.* at 472.

For there to be sufficient minimum contacts, the defendant must purposefully avail itself of the privilege of conducting business within the forum state, thereby invoking the benefits and protections of the forum state's laws. *Burger King*. 471 U.S. at 475. The minimum contacts requirement is satisfied if the defendant purposefully directs its activities at residents in the forum state, and the litigation results from alleged injuries that arise out of or relate to those activities. *Id.* at 472. Purposeful availment by the defendant of the privilege of acting in, or causing a consequence in, the forum state is the *sine qua non* for *in personum* jurisdiction. *Dean v. Motel 6 Operating L.P.*, 134 F.3d 1269, 1273 (6th Cir. 1998); *Southern Machine*, 401 F.2d at 381-82.

The purposeful availment test ensures that a defendant will not be unreasonably haled into a forum solely as a result of random, fortuitous, or attenuated contacts, or as a result of the unilateral activity of another party or a third person. *Burger King*, 471 U.S. at 475; *Keeton v. Hustler Magazine, Inc.,* 465 U.S. 770 (1984); *Youn*, 324 F.3d at 417; *Neogen*, 282 F.3d at 889. Even a single act by a defendant deliberately directed toward a Tennessee resident that gives rise to a cause of action can support a finding of purposeful availment and meet the due process requirement of minimum contacts. *McGee v. Int'l Life Ins. Co.*, 325 U.S. 220, 223 (1957); *Youn*, 324 F.3d at 419; *Neal*, 270 F.3d at 1331.

The courts distinguish between general jurisdiction and specific jurisdiction, either one of which is an adequate basis for personal jurisdiction. *Burger King*, 472 U.S. at 472, 473 n.15; *Youn* 324 F.3d at 417-18. The court has general jurisdiction over a defendant when the defendant's contacts with the forum state are so "continuous and systematic" that the state may exercise jurisdiction over the defendant, even though the cause of action does not relate to those specific contacts with the state. *Youn*, 324 F.3d at 417-418. Specific jurisdiction exists when a court exercises personal jurisdiction over a defendant in a suit arising out of or related to the defendant's specific contacts with the forum state. *Helicopteros Nacionales de Columbia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8 (1984).

Consistent with constitutional due process, the Sixth Circuit has established a three part test for determining whether a federal court may exercise specific personal jurisdiction: (1) the defendant must purposefully avail itself of the privilege of acting or causing a consequence in the forum state; (2) the plaintiff's cause of action must arise from the defendant's activities in the forum state; and (3) the defendant's acts or the consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable. *Youn*, 324 F.3d at 418; *Neal*, 270 F.3d at 332; *Southern Machine*, 401 F.2d at 381. This is commonly referred to as the *Southern Machine* test.

Personal jurisdiction cannot be avoided merely because a defendant does not physically enter Tennessee. *Southern Machine*, 401 F.2d at 382. "Physical presence" in the forum state "is not the touchstone of personal jurisdiction." *Neal*, 270 F.3d at 333. So long as the defendant's actions and efforts are purposefully directed toward Tennessee, the absence of the defendant's physical presence from the state cannot defeat personal jurisdiction in this forum. *Burger King*,471 U.S. at 476.

When the first two elements of the *Southern Machine* test are met, an inference arises that the third element, fairness, is also present. *Compu Serve v. Patterson,* 89 F.3d 1257, 1268(6th Cir.1996); *First National Bank v. J.W. Brewer Tire*

*Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982); *Southern Machine*, 401 F.3d at 384.  Where the first two criteria are satisfied, "only the unusual case will not meet this third criterion." *Aristech Chemical Intern. v. Acrylic Fabricators,* 138 F.3d 624, 628 (6th Cir. 1998) (quoting *Theunissen*, 935 F.2d at 1461).  Defendant must present a "compelling case" that the presence of some other considerations would render personal jurisdiction unfair or unreasonable.  *Burger King*, 471 U.S. at 477.

To determine whether the exercise of personal jurisdiction over the defendant is fair and reasonable, the court balances four factors: (1) the burden on the defendant; (2) the interest of the forum state (Tennessee); (3) the plaintiff's interest in obtaining relief; and (4) the interest of other states in securing the most efficient resolution of the controversy.  *Asahi Metal Indus. Co., Ltd. v. Superior Court,* 480 U.S. 102 (1987).

### 1.  General Jurisdiction

The plaintiffs do not argue in their response that this Court has general jurisdiction over the defendants.  Nowhere in the complaint do they allege that the defendants' contacts with Tennessee are so "continuous and systematic" that the state may exercise jurisdiction over the defendants, even if the cause of action is unrelated to defendants' specific contacts with the state.  *Youn*, 324 F.3d at 417-418.  Therefore, this Court will focus its analysis, as did the plaintiffs, on specific jurisdiction.

### 2.  Specific Jurisdiction

**a.  Whether the defendants purposefully availed themselves of the privilege of acting the in forum state or causing a consequence in the forum state?**

First, this Court must determine whether the defendants purposefully availed themselves of the privilege of acting in Tennessee.  The Sixth Circuit has adopted Justice O'Connor's approach to purposeful availment as articulated in *Asahi Metal Industry Company, Ltd. v. Superior Court*, 480 U.S. 102 (1987) (O'Connor, J.).  *See Bridgeport Music, Inc. v. Still N The Water Publ'g*, 327 F.3d 472, 480 (6th Cir. 2003).  Thus, "[t]he placement of a product into the stream of commerce, without more, is not an act of the defendant purposefully directed toward the forum State." *Asahi*, 480 U.S. at 112.  The exercise of personal jurisdiction regarding Internet activity "is determined by examining the level of the interactivity and commercial nature of the exchange of information that occurs on the Web site."  *Zippo Mfg Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D. Pa. 1997).  "At one end of the [interactivity] spectrum are situations where a defendant clearly does business over the Internet.  If the defendant enters into contracts with residents of a foreign jurisdiction that involved the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper."  *Id.* (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996)).  "The level of contact with a state that occurs

simply from the fact of a website's availability on the Internet is therefore an 'attenuated' contact that falls short of purposeful availment." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 890 (6th Cir. 2002). Specifically, "[t]he operation of an Internet website can constitute the purposeful availment of the privilege of acting in a forum state under the first [*Southern Machine*] factor 'if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.'" *Bird v. Parsons*, 289 F.3d 865, 874 (6th Cir. 2002) (quoting *Neogen*, 282 F.3d at 890). In addition, "[w]hen a defendant makes a conscious choice to conduct business with the residents of a forum state, 'it has clear notice that it is subject to suit there.'" *Zippo*, 952 F.Supp. at 1126 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).

Again, the Second Amended Complaint alleges that Plaintiff Robin Read "learned [in September 2007] that the defendants, jointly and severally, were selling, for profit, 'anti-war t-shirts' with the names of all of the thousands of American service members killed in Iraq, including plaintiff's decedent." The plaintiffs sent Frazier a letter at Lifeweaver, and it stated that he did not have permission to use their son's name and asked him to remove their son's name from any of the t-shirts by a certain date. If Frazier did not comply, then they would file suit in this Court. The plaintiffs also allege that the defendants "purposefully availed themselves of the

privilege of acting in this forum, to wit, the Eastern District of Tennessee, or causing a consequence in the forum state. It is shown to the Court that by selling their product containing the un-consented to sue of plaintiff's decedent's name or likeness, for profit, by way of the internet, defendants, jointly and severally, have 'purposely availed themselves of the privilege of acting in this forum.'" Robin Read "received notice" that her son's name was listed on the t-shirts "as a direct consequence of defendants' joint and several sale of this product over the internet in the stream of interstate commerce, and particularly in this forum."

The plaintiffs attached printed pages from the defendants' website to their complaint. The defendants' website, <www.CarryaBigSticker.com>, is maintained in the State of Arizona. It appears from the attached pages that a visitor of this website can select various products and choose to purchase those products directly from the website. The website advertises "Shipping is FREE in the U.S.!" Thus, once a purchase is made, the defendants ship the product from Arizona to the purchaser's state. The website also states, "Images on this Web site may be used freely on your Web site or in your e-mail . . . ." In addition, certain products, like the anti-war t-shirts at issue here, have detailed descriptions. Once selected, a visitor can choose to enlarge the t-shirts image and "magnify a portion of the front." The website provides various "links" to information regarding the t-shirts, including proposed legislation

in various states and letters from Frazier.  Importantly, the website also states, "Selling these shirts is illegal in five states and may soon be illegal nationwide.  With your support, we will **continue** to sell these shirts in all **50 states** . . . ." (Emphasis added.) Finally worth noting, the website states that "one dollar from the sale of each t-shirt is being donated to charitable organizations that assist families of fallen U.S. troops. As of January 2008, we had donated $3,661 to such charities."[3]

Considering that the plaintiff need only make a *prima facie* case of jurisdiction, and considering that the burden on plaintiffs is relatively slight, this Court concludes that this Court may exercise specific jurisdiction over the defendants.  First, the plaintiff alleges, although rather vaguely, that the t-shirts were sold from the website to purchasers in the State of Tennessee.  Thus, it appears that the defendants have entered into contractual relationships with purchasers from Tennessee.  To have done so, the purchasers would have had to share certain information with the defendants' website, including payment information, and various electronic information would have been exchanged.  In addition, the defendants would then ship the product to the purchaser in Tennessee.  A seller could not mail the product to and accept payment from the customers without intentionally conducting business in

---

[3]The t-shirts sell for $22.00 apiece.  Therefore, as of January 2008, the defendants had sold 3,661 t-shirts.  Accordingly, the money received for these shirts, as of that date, totaled $80,542.00.

Tennessee.  *See Neogen*, 282 F.3d at 892.  Second, the defendants offer products to sell directly from their website to purchasers "in all 50 states," and the website states that the defendants will "continue" to do so, implying awareness of already having sold the t-shirts at issue in all 50 states, which, of course, includes Tennessee.  From this statement, the Court can infer that the defendants make a conscious choice to conduct business with the residents Tennessee.  As such, the defendants have "'clear notice that it is subject to suit there.'"  *Zippo*, 952 F.Supp. at 1126 (quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 297 (1980)).  Third, the plaintiffs put the defendants on notice that they were residents of Tennessee and would file suit in Tennessee if Frazier did not remove their son's name from his product.  The defendants still chose to sell the product.[4]

　　　　　The defendants argue that the defendants did not "knowingly or consciously perform services for Tennessee residents."  As discussed above, their postings on the website, choosing to accept payment, and shipping products to Tennessee indicate otherwise.  The defendants also argue that "[t]he proper test for

---

[4]The record is unclear as to whether t-shirts were sold in Tennessee after this warning.  However, this inference can be drawn from the statements on the website and the pleadings in the case.  For example, the plaintiffs attach pages apparently printed from the website at different times.  The first set of pages states that as of August 2007, 3,082 t-shirts had been sold.  The plaintiffs sent the letter in September 2007.  The second set of pages printed from the website states that as of January 2008, 3,661 t-shirts had been sold.  This Court draws this conclusion based on the amount of money allegedly donated to charities based on t-shirt sales.

personal jurisdiction is . . . whether the absolute amount of business conducted by [defendant] in [the forum] represents something more than 'random, fortuitous, or attenuated contacts' with the state." (Quoting *Neogen*, 282 F.3d at 891.) They further argue the defendants' "mere interactivity of CarryaBigSticker.com alone is insufficient grounds for a Tennessee court to sustain personal jurisdiction." Finally, they argue that "activity via the Internet must be substantially more regular and pervasive to constitute purposeful availment of doing business within a given state."

It is the quality of the contacts, not the quantity, that determines whether they constitute "purposeful availment." *LAK, Inc. v. Deer Creek Enter.*, 885 F.2d 1293, 1301 (6th Cir. 1989). Also, Sixth Circuit cases support this Court's conclusion. In *Neogen*, the Sixth Circuit held that the defendant purposefully availed itself of the privilege of doing business in Michigan by granting clients passwords to access its services on their website and by welcoming business from Michigan customers on a regular basis. 282 F.3d at 890; *see also Zippo*, 952 F.Supp. 1126-27 (holding that business conducting via the Internet with Pennsylvania residents constituted purposeful availment when the residents initiated the business relationship after visiting the defendant's website; the contact was not fortuitous). Similarly in *Bird*, the defendants operated a website through which users could register domain names. 289 F.3d at 874. Defendant's admitted that they processed 333,333 Internet domain-name

-17-

registrations, 70 percent of which were estimated to have occurred in the United States. *Id*. Plaintiff then estimated the number of those sales that were likely to have occurred in Ohio, the forum state, by dividing the number of sales equally among all 50 states. *Id*. The *Bird* court, drawing all reasonable inferences in favor of the plaintiff, regarded the "evidence" as sufficient to establish purposeful availment. *Id*.[5] Finally, in *Bridgeport Music*, the court relied on *Bird* in holding that the volume of business that one defendant conducted through the Internet sales of at least two different albums, i.e., a total of 66 sales, was sufficient evidence to support a *prima facie* finding of purposeful availment. 327 F.3d at 484. Accordingly, this Court concludes that the plaintiffs in this case have made a *prima facie* case that the defendants purposefully availed themselves of acting in this forum. Considering this conclusion, this Court need not address the defendants argument that they have not caused a consequence in Tennessee under the "effects test." *See Calder v. Jones*, 465 U.S. 783 (1984).

> **b. Whether the cause of action arose from the defendants' activities in the forum state?**

The plaintiffs also allege that the defendants "have a substantial enough

---

[5]This Court merely notes that according to the defendants' website, they have sold 3,661 t-shirts since January 2008. If the plaintiffs took a similar approach to that in *Bird*, this would result in approximately 73 t-shirts being sold in Tennessee, assuming all 3,661 shirts were sold in the United States.

connection with the State of Tennessee, and particularly the Eastern District of Tennessee, to make the exercise of jurisdiction over these defendants reasonable."

"If a defendant's contacts with the forum state are related to the operative facts of the controversy, then the action will be deemed to have arisen from those contacts." *CompuServe*, 89 F.3d 1267. This factor "does not require that the cause of action formally 'arise from' defendant's contacts with the forum; rather, this criterion requires only 'that the cause of action, of whatever type, have a substantial connection with the defendant's in-state activities.'" *Third Natl. Bank in Nashville v. WEDGE Group, Inc.*, 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting *Southern Machine*, 401 F.2d at 384 n. 27). The plaintiffs allege that the defendants have violated Tennessee Code Annotated section 47-25-1105, which makes a person who "knowingly uses or infringes upon the use of another individual's name . . . as an item of commerce for purposes of advertising . . . or for purposes of . . . purchases of products . . . without such . . . prior consent . . . of the executor or administrator, heirs, or devisees of such deceased individual," liable to a civil action. Tenn. Code Ann. § 47-25-1105. They also allege claims of negligent infliction of emotional distress, intentional infliction of emotional distress, outrageous conduct, and alternatively, reckless infliction of emotional distress.

These causes of action arise from the defendants' selling of t-shirts in

Tennessee, for profit, which list Brandon Michael Read's name. The operative facts are at least marginally related to the alleged contacts between the defendants and Tennessee. Thus, this Court concludes that the plaintiffs' claims "arise from" the defendants' contacts with Tennessee when considering the lenient standard that applies when evaluating the "arising from" criterion.

**c. Whether the connection between the defendants and Tennessee is substantial enough to render the exercise of personal jurisdiction reasonable?**

An inference arises that the third factor is satisfied if the first two requirements are met. *CompuServe*, 89 F.3d at 1268. This Court must consider the following factors, "including the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interest of other states in securing the most efficient resolution of controversies." *Id*. (internal quotation marks and citation omitted). Although somewhat burdensome in having to defend the lawsuit in Tennessee, the defendants cannot reasonably object to this burden considering they conducted business in Tennessee, they stated on their website that the selling of the t-shirts may soon be illegal in every state, and they were warned of the suit. Tennessee has a legitimate interest in enforcing its statutes and protecting the interests of its citizens. Further, Tennessee has an interest in free speech, and in determining whether its statute is a violation of the defendants' free speech rights. The plaintiffs have an obvious interest in obtaining relief, and Tennessee, albeit in

federal court, would be the most efficient forum to determine whether defendants had violated a Tennessee statute and committed other intentional torts, where the injuries allegedly occurred in Tennessee.

For all of the reasons set forth above, this Court concludes that the plaintiffs have established a *prima facie* case that the defendants are subject to specific jurisdiction in Tennessee. This Court recognizes that this matter is before the Court on a Rule 12(b)(2) motion to dismiss. Thus, this Court has taken all of the facts from the plaintiffs' complaint and construed them in the light most favorable to the plaintiff. After the completion of discovery, the defendants may further contest the issue if such discovery reveals a material variance from the facts stated in this opinion.

## B. FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) requires the Court to construe the complaint in the light most favorable to the plaintiff and accept all the complaint's factual allegations as true. Meador v. Cabinet for Human Res., 902 F.2d 474, 475 (6th Cir. 1990). The Court may not grant a motion to dismiss based upon a disbelief of a complaint's factual allegations. Lawler v. Marshall, 898 F.2d 1196, 1199 (6th Cir. 1990). The Court must liberally construe the complaint in favor of the party opposing the motion. Miller v. Currie, 50 F.3d 373, 377 (6th Cir. 1995). However, the complaint must articulate more than a bare

asserting of legal conclusions. Scheid v. Fanny Farmer Candy Shops, Inc., 859 F.2d 434, 436 (6th Cir. 1988). "[The] complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." Id. (citations omitted).

First, the defendants argue that plaintiffs fail to state a claim for negligent infliction of emotional distress. If a plaintiff did not witness the injury-producing event, then the following elements must be proven:

> (1) the actual or apparent death or serious physical injury of another caused by the defendant's negligence, (2) the existence of a close and intimate personal relationship between the plaintiff and the deceased or injured person, (3) the plaintiff's observation of the actual or apparent death or serious physical injury at the scene of the accident before the scene has been materially altered, and (4) the resulting serious or severe emotional injury to the plaintiff caused by the observation of the death or injury.

Eskin v. Bartee, 262 S.W.3d 727, 739 (Tenn. 2008). The plaintiffs fail to allege that the defendants were the cause in fact of Brandon Read's death. Further, regarding the third element, it is undisputed that Brandon Read died in Iraq. As such, the plaintiffs also fail to allege facts to satisfy this element. Because the plaintiffs have not alleged either direct or inferential allegations respecting all the material elements to sustain a recovery under this legal theory, the defendants' motion regarding this claim is

**GRANTED**.[6]

In the Second Amended Complaint, the plaintiffs allege "intentional infliction of emotional distress," "the tort of outrageous conduct," and "[a]lternatively" that defendants "recklessly inflicted emotional distress." The plaintiffs allege these separately in three separate paragraphs. The defendants move to dismiss the claims. Under Tennessee law, "[i]ntentional infliction of emotional distress and outrageous conduct are not two separate torts, but are simply different names for the same cause of action." *Bain v. Wells*, 936 S.W.2d 618, 622 n.3 (Tenn. 1997). There are three essential elements to this cause of action: (1) the conduct complained of must be **intentional or reckless**; (2) the conduct must be so outrageous that it is not tolerated by civilized society; and (3) the conduct complained of must result in serious mental injury. *Id*. at 622 (emphasis added).[7] In discussing these elements, the Tennessee Supreme Court has emphasized that it is not sufficient that a defendant "has acted with an intent which is tortious or even criminal, or that he has intended to inflict emotional distress." *Id*. (citations omitted). In addition, a plaintiff

---

[6]In plaintiffs' response, they attached affidavits regarding their emotional injuries. They stated that they also attached medical records, but this Court failed to find them in the file. The plaintiffs also deferred "to this Court's good judgment" regarding whether these filings converted the 12(b)(6) motion into one for summary judgment. Because the plaintiffs failed to allege facts regarding other factors, this Court need not address this issue.

[7]The use of the disjunctive in factor one is the basis of plaintiffs' alternative claim.

must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Miller v. Willbanks*, 8 S.W.3d 607, 614 (Tenn. 1999) (quoting Restatement (Second) of Torts § 46 cmt. d (1965)). Also, the Tennessee Supreme Court has stated:

> Although the plaintiff is generally not required to present expert testimony to validate the existence or severity of a mental injury, we emphasize that the evidence must establish that the plaintiff's mental injury is serious or severe.
>
> It is only where [the mental injury] is extreme that the liability arises. Complete emotional tranquility is seldom attainable in this world, and some degree of transient and trivial emotional distress is a part of the price of living among people. The law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it.
>
> Restatement (Second) of Torts § 46 cmt. j (1965).

*Id.* at 615 n.4.

First, considering the complaint in the light most favorable to the plaintiffs, they did allege that the defendants acted intentionally or recklessly. Second, a plaintiff must show that the defendant's conduct was "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency and to be regarded as atrocious, and utterly intolerable in a civilized community." *Miller*, 8 S.W.3d at 614. Although many people may find the defendants' conduct

distasteful, it does not amount to outrageous conduct.  The defendants are correct that exercising free speech in criticizing the government is not outrageous.  This Court notes that another federal district court has ruled that the t-shirts in question are political speech and that this speech is not outrageous.  *Frazier*, 2007 WL 2808559, at *11-13, 18.  The views expressed by the defendants may be unpopular and even offensive to some people, but they do not rise to the level of legal outrageous conduct.  Third, the plaintiffs must allege a mental injury, and expert proof is not a requirement.  In addition, "[t]he law intervenes only where the distress is so severe that no reasonable [person] could be expected to endure it."  *Miller*, 8 S.W.3d at 615.  The complaint states that the defendants caused "severe mental and emotional anguish to the plaintiffs."  The affidavits the plaintiffs filed go into some detail as to the mental injury.  Because this Court has determined that the second element has not been met, this Court need not make a determination on this element.  Therefore, for the reasons set forth above, the defendants' motion in this regard is **GRANTED**.

Finally, the defendants did not specifically move in their motion to dismiss the claim that the defendants had violated the Tennessee Personal Rights Protection Act.  They do, however, raise the issue in  reply  to the plaintiff's response.  Thus, this Court will address the issue.

The complaint states that the defendants were "in violation of certain

Tennessee and Federal common law and statutory enactments. . . . Included among these statutes is the Tennessee Personal Rights Protection Act of 1984, codified at TCA 47-25-1101 to 47-25-1108, inclusive." Section 47-25-1105 states:

> Any person who knowingly uses or infringes upon the use of another individual's name, photograph, or likeness in any medium, in any manner directed to any person other than such individual, as an item of commerce for purposes of advertising products, merchandise, goods, or services, or for purposes of fund raising, solicitation of donations, purchases of products, merchandise, goods, or services, without such individual's prior consent, or, in the case of a minor, the prior consent of such minor's parent or legal guardian, or in the case of a deceased individual, the consent of the executor or administrator, heirs, or devisees of such deceased individual, shall be liable to a civil action.

Tenn. Code Ann. § 47-25-1105(a) (2010).

The defendants argue that the statute does not apply in this situation because it "limits liability to unauthorized used of a name for endorsement purposes or to encourage others to buy products or raise money. It does not impose liability for substantive uses of a name such as in a list on a t-shirt." Although the Sixth Circuit has apparently not addressed the question, the United States District Court for the Middle District of Tennessee has spoken on this issue. In *Apple Corps Limited v. A.D.P.R., Inc.*, 843 F.Supp. 342, 347-48 (M.D. Tenn. 1993), the court stated:

> The statue does not prohibit *all* unauthorized uses of another's name or likeness. Rather, the statue is narrowly drawn, so that it only prohibits the unauthorized use of

> another's name or likeness "as an item of commerce for
> purposes of advertising products, merchandise, goods, or
> services, or for purposes of . . . solicitation of . . . purchases
> of products, merchandise, goods, or services." Indeed, its
> legislative history indicates that the statute was intended to
> "create[ ] an inheritable property right for those people who
> use their name[s] or likeness[es] in a commercial manner,
> such as an entertainer or sports figure–*someone who uses
> [his or her] name for endorsement purposes.*

*Id.* at 347-48 (citations omitted). The legislative history likewise supports defendants'

argument. In the situation currently before the Court, Brandon Michael Read's name

is not used for endorsement purposes. His name is not used to promote or encourage

others to buy the product. It is used in combination with other's names to make a

political statement, which is an exercise of free speech. Thus, the statute does not

apply to the case at hand. Accordingly, the defendants' motion in this regard is

**GRANTED,** and the Court need not decide whether the statute is constitutional,

considering it does not apply to the case at hand.

## III.    CONCLUSION

For the reasons set forth above, the defendants' motion in all respects is

**GRANTED**, and the case against the defendants is hereby **DISMISSED**.

ENTER:

s/J. RONNIE GREER
UNITED STATES DISTRICT JUDGE
